UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
BASF CORPORATION,

                             Plaintiff,

            v.

THE ORIGINAL FENDER MENDER, INC.,

                          Defendant.
-------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

23-CV-2796
(Gonzalez, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Plaintiff BASF Corporation brings this action against Defendant The Original Fender Mender, Inc., alleging causes of action for breach of contract, unjust enrichment, and declaratory relief. *See generally* Dkt. No. 1. Defendant did not answer or otherwise respond to the complaint.

Currently pending before this Court, on a referral from the Honorable Hector Gonzalez, United States District Judge, is Plaintiff's second motion for default judgment. *See* Dkt. No. 24; *see also* May, 6, 2024 Referral Order. For the reasons set forth below, this Court respectfully recommends that Plaintiff's motion for default judgment be granted in part and denied in part.[1]

I.    **Background**

    A.    **Factual Allegations**

The following facts are taken from the complaint, Plaintiff's motion, and the attachments filed in support of Plaintiff's motion; the facts are assumed to be true for the purposes of this motion. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (in light of defendant's default, a court is required to accept all of plaintiff's factual allegations as true and draw all reasonable

---

[1] Emily Petermann, a summer intern who is a second-year law student at the Elisabeth Haub School of Law at Pace University, is gratefully acknowledged for her assistance in the research and drafting of this report and recommendation.

inferences in plaintiff's favor); *see also BASF Corp. v. Original Fender Mender, Inc.*, No. 23-CV-2796 (HG) (JAM), 2023 WL 8853704 (E.D.N.Y. Dec. 22, 2023), *report and recommendation adopted*, Text Order (E.D.N.Y. Jan. 9, 2024) (same); *Doe v. Hyassat*, No. 18-CV-6110 (PGG) (OTW), 2024 WL 1955354 (S.D.N.Y. May 3, 2024) (same).

Plaintiff—a New Jersey-based corporation incorporated under the laws of the State of Delaware—sells aftermarket paints, refinishes, coating, primers, thinners, and reducers, along with other related products and materials, for the reconditioning refinishing, and repainting of vehicles (collectively, "Refinish Products"). Dkt. No. 1 ¶¶ 1, 4. Plaintiff sells the Refinish Products to distributors that in turn sell the Refinish Products to automotive body shops. *Id.* Defendant is one such automative body shop; it is a corporation with a principal executive office located at 27-16 21st Street, Long Island City, New York 11102. *Id.* ¶¶ 2, 5.

On or about September 6, 2017, Plaintiff and Defendant entered into a Requirements Agreement (Dkt. No. 1-3), pursuant to which Defendant agreed for Plaintiff to fulfill one hundred percent of Defendant's requirements for Refinish Products up to a minimum purchase requirement of $558,000.00 in the aggregate (the "Minimum Purchase Requirement"). Dkt. No. 1 ¶ 10, 20; Dkt. No. 1-3 § 1. In consideration of Defendant satisfying the Minimum Purchase Requirement, Plaintiff paid Defendant $55,000.00. Dkt. No. 1 ¶ 11; Dkt. No. 1-3 § 3. Defendant also agreed to assume liability for $24,000.00 in unearned consideration from a prior contract between the parties. Dkt. No. 1 ¶ 11; Dkt. No. 1-3 § 3. Pursuant to the terms of the contract, if the Requirements Agreement was terminated for any reason prior to Defendant fulfilling its Minimum Purchase Requirement, Defendant was obligated to refund 100% of the consideration paid by Plaintiff

($55,000.00) plus the unearned consideration ($24,000.00), for a total amount due of $79,000.00 (the "Contract Fulfillment Consideration").[2]  Dkt. No. 1 ¶ 12; Dkt. No. 1-3 § 3.

Additionally, the Requirements Agreement contains a choice-of-law clause, which states:

> This Agreement and performance or non-performance hereunder shall be governed by and construed under the laws of the State of Michigan without regard to principles of conflicts of law.  Each party hereto submits to the jurisdiction of the courts located in Oakland County, Michigan in connection with any dispute arising under this Agreement.

Dkt. No. 1-3 § 6.

Plaintiff claims that on or about August 2022, Defendant breached—and ultimately terminated—the Requirements Agreement by closing its business operations and ceasing to purchase Refinish Products from Plaintiff prior to fulfilling its Minimum Purchase Requirement. Dkt. No. 1 ¶ 13.  According to Plaintiff, at the time of the breach, Defendant had purchased approximately $283,091.04 in Refinish Products from Plaintiff, leaving a balance due and owing of $274,908.96.  *Id.* ¶¶ 14, 22.  Defendant also failed to return any of the Contract Fulfillment Consideration to Plaintiff in violation of the terms of the Requirements Agreement.  *Id.* ¶ 13.  On February 22, 2023, and March 6, 2023, Plaintiff sent Defendant default letters to provide "notice that [Defendant] was in default of its contractual obligations and [to] demand[] a refund of the Contract Fulfillment Consideration."  *Id.* ¶ 17; *see also* Dkt. Nos. 1-4, 1-5.

## B.    Procedural History

Plaintiff commenced this action on April 14, 2023.  *See generally* Dkt. No. 1.  On June 6, 2023, Plaintiff served Defendant by leaving a copy of the summons and complaint with a person named "Maria Sokolich for The Original Fender Mender Inc. c/o CEO Steven Sokolich" at 16919

---

[2] Plaintiff alleges in the complaint that the total Contract Fulfillment Consideration is $74,000.  *See* Dkt. No. 1 ¶ 12.  According to Plaintiff's counsel, this was a mathematical error, and the correct amount of the Contract Fulfillment Consideration is $79,000.  *See* Dkt. No 24-1 n.1.

25th Avenue, Whitestone, New York 11357.  *See* Dkt. No. 9.  The process server stated that Maria Sokolich "was authorized to accept legal papers for the corporation."  *Id.*  The affidavit of service, however, did not indicate Defendant's relationship to Maria Sokolich or to the premises (*i.e.*, dwelling place, place of business, usual place of abode, or last known address).  *Id.*  On July 19, 2023, Plaintiff requested a certificate of default after Defendant failed to answer or otherwise defend against the Complaint.  Dkt. No. 10.  The Clerk of the Court entered the certificate of default on July 25, 2023.  Dkt. No. 12.

On August 25, 2023, Plaintiff filed a motion for default judgment.  Dkt. No. 13.  According to the declaration of Plaintiff's counsel, Plaintiff served Defendant with the motion on an unspecified date by delivering a copy to Defendant's "last known address."  *See* Dkt. No. 13-2 ¶ 12.

On August 25, 2023, Plaintiff's motion was referred to the Honorable Ramon E. Reyes, Jr., then-United States Magistrate Judge, for a Report and Recommendation.  *See* Aug. 25, 2023 Referral Order.  On November 30, 2023, this action was reassigned to the undersigned.  *See* Nov. 30, 2023 Dkt. Entry.  On December 22, 2023, the undersigned issued a Report and Recommendation recommending that Plaintiff's motion for default judgment be denied without prejudice due to Plaintiff's failure to comply with Local Civil Rule 55.2(b) and failure to properly serve Defendant with the summons and complaint.  *See* Dkt. No. 15; *see also BASF Corp.*, 2023 WL 8853704.

On January 9, 2024, Judge Gonzalez adopted the Report and Recommendation in its entirety and denied Plaintiff's motion for default judgment without prejudice and with leave to re-file upon curing the stated deficiencies.  *See* Jan. 9, 2024 Dkt. Entry.

On January 30, 2024, Plaintiff served the Defendant with the summons and complaint by delivering copies to the New York Secretary of State in Albany, pursuant to section 306 of the New York Business Corporation Law ("BCL").  Dkt. No. 19; *see also* BCL § 306(b)(1).

On February 26, 2024, the Court ordered, *inter alia*, that "[i]f Defendant has not entered an appearance, filed an answer, or otherwise responded" to the Complaint by March 14, 2024, Plaintiff shall request a Certificate of Default from the Clerk of the Court.

After Defendant failed to timely respond to the Complaint, Plaintiff requested a second certificate of default on March 27, 2024.  Dkt. No. 21.  Accordingly, the Clerk of the Court entered a certificate of default against Defendant on April 3, 2024.  Dkt. No. 22.

On May 3, 2024, Plaintiff filed its second motion for default judgment.  Dkt. No. 24.  In support of its motion, Plaintiff submits: (1) an affirmation from Plaintiff's counsel, Caroline C. Marino (Dkt. No. 24-1); (2) a copy of the complaint, with exhibits (Dkt. No. 24-2); (3) an affidavit of service (Dkt. No. 24-3); (4) the certificate of default (Dkt. No. 24-4); (5) invoice exhibits (Dkt. No 24-5); (6) an affidavit from Plaintiff's employee, Caroline Cooper (Dkt. No. 24-6); (7) a memorandum of law (Dkt. No. 24-7); and (8) a proposed order for default judgment (Dkt. No. 24-8).

Plaintiff mailed the motion for default judgment to "The Original Fender Mender, Inc.  c/o Steve Sokolich" at 16919 25th Avenue Whitestone, New York 11357.  *See* Dkt. Nos. 23, 25.  Because Plaintiff provided no context for this address, and this address was not pled in the complaint as Defendant's last known business address, the Court entered the following order on July 26, 2024:

> Plaintiff's Motion for Default Judgment does not comply with Local Rule 55.2(a)(3) (formerly, Local Civil Rule 55.2(c)), which requires that copies of such motion papers be mailed to the last known business address of the party against whom default judgment is

5

> sought. Plaintiff shall comply with Local Civil Rule 55.2(a)(3) and
> file proof of service by July 29, 2024.

July 26, 2024 Dkt. Order.

On July 29, 2024, Plaintiff complied with the Court's order by mailing the motion for default judgment to Defendant's last known business address, located at 27-16 21st Street, Long Island City, New York 11102. *See* Dkt. No. 26; *see also* Dkt. No. 1 ¶ 2 (alleging Defendant's business address).

## II. Standard for Default Judgment

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). At the first step, the Clerk of Court enters a party's default after an affidavit or other evidence shows that the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a); *Esquivel v. Lima Rest. Corp.*, No. 20-CV-2914 (ENV) (MMH), 2023 WL 6338666, at *3 (E.D.N.Y. Sept. 29, 2023) ("[W]hen a party uses an affidavit or other proof to show that a party has 'failed to plead or otherwise defend' against an action, the clerk shall enter a default." (citing Fed. R. Civ. P. 55(a)). "If a claim is for 'a sum certain or a sum that can be made certain by computation,' the clerk can enter judgment." *Id.* (citing Fed. R. Civ. P. 55(b)(1)).

At the second step, and "[i]n all other cases, the party must apply to the court for a default judgment." *Id.* (citing Fed. R. Civ. P. 55(b)(2)). To "enter or effectuate judgment" the Court is empowered to: "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2).

The Second Circuit "generally disfavor[s]" default judgment and has repeatedly expressed a "preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). Nevertheless, in evaluating a motion for default judgment, a court accepts as true the plaintiff's well-pleaded factual allegations, except those relating to damages. *Greyhound Exhibitgroup*, *Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974). The plaintiff bears the burden of alleging "specific facts," rather than "mere labels and conclusions" or a "formulaic recitation of the elements," so that a court may infer a defendant's liability. *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *3 (E.D.N.Y. Sept. 1, 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), *report and recommendation adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015).

The decision to grant or deny a default motion is "left to the sound discretion of a district court." *Esquivel*, 2023 WL 6338666, at *3 (quoting *Shah v. New York State Dep't of Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established." *Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623 (NGG) (PK), 2023 WL 2583856, at *7 (E.D.N.Y. Mar. 21, 2023) (quotations and citation omitted). The Court may also "consider numerous factors, including whether plaintiff has been substantially prejudiced by the delay involved and whether the grounds for default are clearly established or in doubt." *Franco v. Ideal Mortg. Bankers, Ltd.*, No. 07-CV-3956 (JS) (AKT), 2010 WL 3780972, at *2 (E.D.N.Y. Aug. 23, 2010) (cleaned up), *report and recommendation adopted*, 2010 WL 3780984 (E.D.N.Y. Sept. 17, 2010). As the Second Circuit has observed, the Court is guided by the same factors which apply to a motion to set aside entry of a default, which include "whether the defendant's

default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment. *See Enron Oil Corp.*, 10 F.3d at 96; *Franco*, 2010 WL 3780972, at *2 (listing factors).

## III.    Jurisdiction and Venue

The Court "must satisfy itself that it has subject matter and personal jurisdiction before rendering judgment against defendants." *Dumolo v. Dumolo*, No. 17-CV-7294 (KAM) (CLP), 2019 WL 1367751, at *4 (E.D.N.Y. Mar. 26, 2019); *see Covington Indus., Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1980) ("A judgment entered against parties not subject to the personal jurisdiction of the rendering court is a nullity.").

### A.    Subject Matter Jurisdiction

The Court has diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(a) because Plaintiff is a citizen of the State of New Jersey and Delaware (having its principal place of business in New Jersey and being incorporated in Delaware), Defendant is a citizen of the State of New York, and the amount in controversy exceeds $75,000.00. *See* Dkt. No. 1 ¶¶ 1-2, 6; *see also* 28 U.S.C. § 1332(a).

### B.    Personal Jurisdiction

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) (citation omitted); *see also BASF Corp.*, 2023 WL 8853704, at *5 ("A court may not enter default judgment unless it has jurisdiction over the person of the party against whom the judgment is sought, which also means that he must have been effectively served with process." (internal quotations and citation omitted)).

8

Here, the Court has personal jurisdiction over Defendant. Plaintiff properly served Defendant with the summons and complaint by delivering and leaving copies with the New York Secretary of State. *See* Fed. R. Civ. P. 4(h)(1)(B); BCL § 306(b)(1); *see also* Dkt. No. 19. "[S]erving a summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (quoting Fed. R. Civ. P. 4(k)(1)(A)). Accordingly, this Court has personal jurisdiction over Defendant.

### C.  Venue

 "[A] civil action may be brought in a judicial district in which any defendant resides[.]" 28 U.S.C. § 1391(b)(1). Venue is proper in this district because Defendant resides in this district.[3]  *See* Dkt. No. 1 ¶ 2.

## IV.  <u>Procedural Compliance with Local Civil Rules 7.1 and 55.2[4]</u>

"A motion for default judgment will not be granted unless the party making the motion adheres to all of the applicable procedural rules." *Annuity, Welfare & Apprenticeship Skill*

---

[3] The choice-of-law provision in this case appears in a section of the Requirements Agreement that also contains a provision, which Plaintiff has chosen not to enforce, stating that "[e]ach party hereto submits to the jurisdiction of the courts located in Oakland County, Michigan in connection with any dispute arising under this Agreement." Dkt. No. 1-3 § 6. "However, a forum selection clause is not jurisdictional and the right to attack the forum is personal and waivable." *BASF Corp. v. Prime Auto Collision Inc.*, No. 20-CV-4797 (NGG) (RLM) , 2022 WL 704127, at *4 n.3 (E.D.N.Y. Mar. 9, 2022). Here, by failing to appear, Defendant has waived any challenge to venue in this district. *See id.* (holding that Michigan forum selection clause did not oust the court of venue because the defendant waived enforcement of the clause by failing to respond to the summons and complaint); *LG Cap. Funding, LLC v. M Line Holdings, Inc.*, 422 F. Supp. 3d 739, 755 (E.D.N.Y. 2018) (holding that defendant waived enforcement of forum selection clause by not responding to the complaint).

[4] The Local Rules of the United States District Court for the Southern and Eastern Districts of New York were updated on July 1, 2024. As set forth in Local Rule 1.1., "[t]hese Local Civil Rules take effect on July 1, 2024 [] and govern actions pending or filed on or after that date. For actions pending on the Effective Date, if fewer than 14 days remain to perform an action governed by these Rules, the provisions of the previous Local Rules effective on June 30, 2024 will govern." Thus, the previous Local Rules are applicable here.

*Improvement & Safety Funds of Int'l Union of Operating Engineers, Loc. 15, 15A, 15C & 15D, AFL-CIO v. Allstate Mapping & Layout, LLC*, No. 22-CV-1831 (PKC) (TAM), 2023 WL 1475389, at *1 (E.D.N.Y. Feb. 2, 2023) (quoting *Century Surety Company v. Adweek*, No. 16-CV-335 (ENV) (PK), 2018 WL 10466835, at *1 (E.D.N.Y. Jan. 9, 2018)).  "[L]ocal rules have the force of law, as long as they do not conflict with a rule prescribed by the Supreme Court, Congress, or the Constitution."  *See Fin. Servs. Vehicle Tr. V. Osmeña*, No. 22-CV-7491 (RPK) (CLP), 2023 WL 7000935, at *2 (E.D.N.Y. Aug. 15, 2023) (citations and quotation marks omitted).

Under Local Civil Rule 7.1, a motion for default judgment must consist of a notice of motion, a memorandum of law, and supporting affidavits and exhibits containing any factual information and portions of the record necessary for the decision of the motion.  Loc. Civ. R. 7.1(a).  Under Local Civil Rule 55.2, a "party seeking a judgment by default . . . shall append to the application (1) the Clerk's certificate of default, (2) a copy of the claim to which no response has been made, and (3) a proposed form of default judgment," and must mail these three items to the "last known business address" of the defaulting party (if not an individual).  Loc. Civ. R. 55.2(b)-(c) (emphasis added).

Here, Plaintiff has complied with Local Civil Rules 7.1 and 55.2(b).  Plaintiff's motion includes a notice of motion (Dkt. No. 24), a memorandum of law (Dkt. No. 24-7), and affidavits with exhibits (Dkt. Nos. 24-1—24-6) in accordance with Local Civil Rule 7.1.  Plaintiff also attaches the complaint, certificate of default, and a proposed form of default judgment to its motion in accordance with Local Civil Rule 55.2(b).  *See* Dkt. Nos. 24-2, 24-4, 24-8.

Plaintiff has also complied with Local Civil Rule 55.2(c).  According to the certificate of service, on July 29, 2024, Plaintiff served Defendant with a copy of the default judgment motion

at its last known business address, located at 27-16 21st Street, Long Island City, New York 11102.

Dkt. No. 26; *see also* Dkt. No. 1 ¶ 2 (alleging Defendant's business address).

Accordingly, Plaintiff has complied with Local Civil Rules 7.1 and 55.2.

**V.    Liability**

**A.    Choice of Law**

Before the Court assesses liability, it must determine what law should be applied to Plaintiff's claims. *See, e.g., D'Amato v. Five Star Reporting, Inc.*, 80 F. Supp. 3d 395, 407 (E.D.N.Y. 2015) ("As an initial matter, the Court must determine what law should be applied to the [p]laintiff's common law breach of contract and equitable claim[ ] for unjust enrichment[.]").

As noted above, this case is predicated upon diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). The Second Circuit has held that a federal court sitting in diversity applies the choice-of-law rules of the state in which it sits. *See Maryland Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 151 (2d Cir. 2003) ("A federal court sitting in diversity applies the choice-of-law rules of the forum state." (citation omitted)). "For contract claims, New York applies a 'grouping of contacts' or 'center of gravity' approach" to determine whether to apply New York substantive law. *Star Ins. Co. v. Champion Constr. Servs. Corp.*, No. 13-CV-3635 (ARR) (RML), 2014 WL 4065093, at *2 (E.D.N.Y. July 30, 2014) (citations omitted), *report and recommendation adopted*, 2014 WL 4065094 (E.D.N.Y. Aug. 15, 2014). In making this determination,

> the [C]ourt should consider '(1) any choice-of-law provision contained in the contract; (2) the place where the contract was negotiated, issued, and signed; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties.'

*Id.* (quoting *Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 162 (2d Cir. 1998)).

Where, as here, a contract contains a choice-of-law provision, "New York courts will generally honor" that provision. *Scharnikow v. Siracuse*, No. 15-CV-6991 (DRH) (SIL), 2016 WL 7480360, at *3 (E.D.N.Y. Dec. 6, 2016) (citation omitted), *report and recommendation adopted*, 2016 WL 7480364 (E.D.N.Y. Dec. 29, 2016).  A court may only apply the law chosen in the contract, however, if the selected state law is sufficiently related to the transaction. *BASF Corp*, 2022 WL 704127, at *4 (citation omitted).  Under New York law, the court has the option to "decline to enforce choice-of-law provisions if the chosen law does not bear a reasonable relationship to the parties or the transaction." *Frankel v. Citicorp Ins. Servs., Inc.*, 80 A.D.3d 280, 286 (2d Dep't 2010) (citations omitted); *see also Star Ins. Co.*, 2014 WL 4065093, at *3 (concluding that the parties and transaction had insufficient contact with Ohio for the choice-of-law provision to be valid or enforceable).

Here, the choice-of-law provision in the Requirements Agreement states: "[t]his Agreement and performance or non-performance hereunder shall be governed by and construed under the laws of the State of Michigan without regard to principles of conflicts of law." Dkt. No. 1-3 § 6.  According to the Complaint, neither party is a citizen of Michigan. *See* Dkt. No. 1 ¶¶ 1-3 (alleging Plaintiff is incorporated under Delaware law, with its principal place of business in New Jersey, and Defendant is organized under New York law, with its principal place of business in Long Island City, New York).  Plaintiff does not allege that the negotiation of the Requirements Agreement or signing thereof took place in Michigan.  Plaintiff also does not allege any facts connecting the parties' transaction to the state of Michigan.  Therefore, and in the absence of any conflict between Michigan and New York law, the state of Michigan has insufficient contacts and bears no reasonable relationship to the parties or transaction.

Accordingly, "consistent with a series of decisions involving similar choice-of-law provisions in BASF contracts, this Court applies the law of the forum state (here, New York law) to BASF's claims." *See BASF Corp*, 2022 WL 704127, at *4 (declining to enforce the exact same choice-of-law provision on a motion for default judgment brought by BASF Corporation and instead opting to apply New York law because neither party was a Michigan citizen, the contract was neither negotiated nor signed in Michigan, and the transaction had no reasonable connection to the state); *accord BASF Corp. v. Gabriel's Collision Norman Ave., Inc.*, No. 21-CV-1908 (ENV) (RER), 2022 WL 1407244, at *2 n.2 (E.D.N.Y. Jan. 12, 2022); *see also BASF Corp. v. ENS, Inc.*, No. 22-CV-00577 (ODW) (GJSx), 2022 WL 16973248, at *3 (C.D. Cal. Nov. 16, 2022); *BASF Corp. v. SSM Automotive Group, Inc.*, No. 21-CV-01191 (MEMF) (SHKx), 2022 WL 2288427, at *3 (C.D. Cal. May 17, 2022); *BASF Corp. v. Exotic Collision Ctr., Inc.*, No. 18-CV-09350 (RGK) (SS), 2019 WL 6317772, at *4 (C.D. Cal. Apr. 11, 2019).

**B.    Plaintiff's Breach of Contract Claim**

Plaintiff's first cause of action is for breach of contract. *See* Dkt. No. 1, at 4-5.  Under New York law, "[i]n order to recover from a defendant for breach of contract, a plaintiff must prove, by a preponderance of the evidence, (1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC,* 631 F.3d 42, 52 (2d Cir. 2011); *see also Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015); *accord AKF, Inc. v. W. Foot & Ankle Ctr.*, 632 F. Supp. 3d 66, 74 (E.D.N.Y. 2022).

As to the first element—the existence of a contract—Plaintiff alleges, and the Requirements Agreement supports, that Plaintiff and Defendant entered into a contract pursuant

to which Defendant agreed that Plaintiff would fulfill one hundred percent of Defendant's requirements for Refinish Products up to a minimum purchase requirement of $558,000.00 in the aggregate. Dkt. No. 1 ¶¶ 10, 20; Dkt. No. 1-3 § 1; *see also BASF Corp*, 2022 WL 704127, at *5 (finding similar allegations sufficient to establish first element).

As to the second element, Plaintiff alleges that it performed under Requirements Agreement by paying Defendant the new contract consideration of $55,000.00 and prior contract consideration of $24,000. Dkt. No. 1 ¶ 11. Plaintiff further alleges that it remains "ready, willing, and able to perform all obligations, conditions, and covenants required under the Requirements Agreement." *Id.* ¶16; *see also BASF Corp*, 2022 WL 704127, at *5 (finding similar allegations sufficient to establish second element).

As to the third element, Plaintiff alleges that Defendant breached the Requirements Agreement by failing to fulfill the $558,000 Minimum Purchase Requirement and only purchasing approximately $283,091.04 of BASF products, leaving a balance due of $274,908.96. Dkt. No. 1 ¶¶ 14, 22. Additionally, Plaintiff alleges that Defendant failed to return the Contract Fulfillment Consideration of $79,000, satisfying the third element. *Id.* ¶¶ 12, 14-15, 23-24; *see also BASF Corp*, 2022 WL 704127, at *5 (finding similar allegations sufficient to establish breach).

As to the fourth element regarding damages, Plaintiff alleges that it suffered damages in the amount of $353,908.96, with interest, as a result of Defendant's failure to perform its obligations under the Requirements Agreement. Dkt. No. 1 ¶¶ 24, 26. This amount consists of the balance of the Minimum Purchase Requirement ($274,908.96) plus the unreturned Contract Fulfillment Consideration ($79,000). Dkt. No. 1 ¶ 24; Dkt. No. 24-7 at 11.

These allegations are sufficient at the default judgment stage to establish Defendant's liability for breach of contract under New York law. *See, e.g., BASF Corp*, 2022 WL 704127, at

14

*5; *Abularach v. High Wing Aviation LLC*, No. 22-CV-1266 (MKB) (RML), 2022 WL 18558800, at *2 (E.D.N.Y. Dec. 19, 2022) (finding allegations in complaint sufficient to establish liability for breach of contract on default judgment motion), *report and recommendation adopted*, 2023 WL 1766282 (E.D.N.Y. Feb. 3, 2023).

Accordingly, this Court respectfully recommends that Plaintiff's motion for default judgment be granted with respect to its breach of contract claim against Defendant.

### C.  Plaintiff's Unjust Enrichment Claim

Plaintiff's second cause of action is for unjust enrichment.  *See* Dkt. No. 1, at 6.  "[T]o succeed on a claim for unjust enrichment under New York law, a plaintiff must prove that '(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover[.]'"  *Diesel Props S.r.l.*, 631 F.3d at 55 (quoting *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004)).  "However, when the 'matter' is controlled by the contract, the unjust enrichment claim is deemed duplicative, and the plaintiff has no valid claim under New York law."  *BASF Corp.*, 2022 WL 704127, at *5 (citing *Marshall v. Hyundai Motor Am.*, 51 F.Supp.3d 451, 471 (S.D.N.Y. 2014).  Claims are considered duplicative of one another "if they arise from the same facts and do not allege distinct damages."  *Id.* (citations, quotation marks, and ellipses omitted).

Here, Plaintiff's unjust enrichment claim arises from the same set of facts as Plaintiff's breach of contract claim.  *Compare* Dkt. No. 1 ¶¶ 19-26 with ¶¶ 27-32.  It also seeks the same relief.  *See id.*  Specifically, Plaintiff's unjust enrichment claims seeks return of the Contract Fulfillment Consideration based on Defendant's failure to fulfill its obligations under the Requirements Agreement.  *See id.* ¶¶ 27-32.  When a valid contract governs the dispute between parties, the plaintiff is not entitled to recover for its unjust enrichment claim.  *See La Saltena S.A.U.*

*v. Ercomar Imports Internacional Corp.*, No. 21-CV-4675 (KAM) (LB), 2024 WL 2319622, at *7 (E.D.N.Y. May 22, 2024) (dismissing plaintiff's unjust enrichment claim as an invalid cause of action under New York law, where a valid contract existed between the parties, and the claim was duplicative of the breach of contract claim). Therefore, as in similar *BASF* cases, this Court "respectfully recommends that [P]laintiff's motion for default judgment be denied with respect to its unjust enrichment claim and that this claim be dismissed as duplicative of [P]laintiff's breach of contract claim." *BASF*, 2022 WL 704127, at *6.; *see also BASF Corp.*, 2022 WL 1407244, at *3 (recommending denial of a motion for default judgment with respect to plaintiff's unjust enrichment claim that "ar[ose] from the same set of facts and the same contract as the breach of contract claim."); *LG Capital Funding*, *LLC v. Ubiquity, Inc.*, No. 16-CV-3102 (LDH) (SMG), 2017 WL 3173016, at *3 (E.D.N.Y. May 12, 2017) (recommending that plaintiff's motion for default judgment be denied in part because the unjust enrichment claim was redundant to the breach of contract claim), *report and recommendation adopted*, 2017 WL 3168961 (E.D.N.Y. July 25, 2017).

### D.    Plaintiff's Request for Declaratory Relief

Plaintiff's third cause of action is for "declaratory relief." Dkt. No. 1, at 7. While Plaintiff's complaint requests a "judicial declaration of BASF's and Defendant's respective rights under the Requirements Agreement," Dkt. No. 1 ¶ 34, the motion for default judgment fails to request such relief and sets forth no arguments as to why a declaratory judgment is appropriate under these circumstances, *see generally* Dkt. Nos. 1, 24, 24-7, 24-8.

Accordingly, this Court respectfully recommends denying Plaintiff's claim for declaratory relief. *See BASF Corp*, 2022 WL 704127, at *6 (recommending that plaintiff not be granted declaratory relief because plaintiff did not present argument on this claim in its motion for default

16

judgment); *Century 21 Real Est., LLC v. Raritan Bay Realty, Ltd.,* No. CV-07-1455 (CPS), 2008 WL 4190955, at *3 (E.D.N.Y. Sept. 3, 2008) ("However, the fact that a complaint stands unanswered does not suffice to establish liability on its claims: a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading.").

**VI.**    **Damages**

As Defendant's liability has been established with respect to Plaintiff's breach of contract claim, the Court turns to evaluate damages. "While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. "Rather, the Court must be satisfied that Plaintiff has met the burden of proving damages to the Court with reasonable certainty." *Balhetchet v. Su Caso Mktg. Inc.*, No. 19-CV-4475 (PKC) (SJB), 2020 WL 4738242, at *3 (E.D.N.Y. Aug. 14, 2020) (cleaned up).

Under New York law, "[a] party injured by breach of contract is entitled to be placed in the position it would have occupied had the contract been fulfilled according to its terms." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.,* 500 F.3d 171, 185 (2d Cir. 2007). A plaintiff may submit documentary evidence or detailed affidavits to support its damages claim. *Chen*, 2023 WL 2583856, at *14.

Here, Plaintiff requests a total of $353,908.96 in monetary damages, which includes the unfulfilled Minimum Purchase Requirement ($274,908.96), the Contract Fulfillment Consideration ($79,000.00), costs ($904.50), fees, pre-judgment interest calculated at the rate of 9%, and post-judgment interest at the statutory rate. *See* Dkt. No. 1 ¶¶ 22-24, 37; Dkt. No. 24-7, at 6; Dkt. No. 24-8, at 2.

As set forth below, this Court respectfully recommends awarding Plaintiff $79,000 for the Contract Fulfillment Consideration, $904.50 in costs, pre-judgment interest calculated at the rate of 9%, and post-judgment interest at the statutory rate.   This Court further respectfully recommends denying Plaintiff's request for the unfulfilled Minimum Purchase Requirement and attorneys' fees.

### A.    Minimum Purchase Requirement

Plaintiff requests monetary damages in the amount of the unfilled Minimum Purchase Requirement of $274,908.96 for Defendant's failure to reach its minimum purchase amount of $558,000 in BASF products.  *See* Dkt. No. 1 ¶¶ 13-14, 22; Dkt. No. 24-7, at 6-7.  In support of this request, Plaintiff asserts that Defendant "purchased only approximately $283,091.04 in BASF Refinish Products, leaving a purchase balance due and owing of $274,908.96."  Dkt. No. 1 ¶ 14.

As stated above, Plaintiff is "entitled to be placed in the position it would have *occupied* had" Defendant fully performed under the Requirements Agreement.  *Merrill Lynch & Co.*, 500 F.3d at 185 (emphasis added).  But, "[t]his is not a case of goods sold and delivered in which event the 'purchase price' would be the appropriate amount of damages."  *BASF Corp. v. Medina Auto and Collision, Inc.*, No. 21-CV-3556 (DRH) (ARL), 2022 WL 2302152, at *2 (E.D.N.Y. June 27, 2022).  Instead, this case involves a requirements contract, and therefore, Plaintiff is entitled to damages, at most, in the amount of the profit it would have made had Defendant purchased the additional $274,908.96 of refinishing products.  *Id.* (declining to award BASF damages in the amount of the unfulfilled minimum purchase requirement because BASF was entitled to at most "the amount of the profit it would have made" had defendant fulfilled the minimum purchase requirement).

Importantly, Plaintiff alleges that Defendant agreed to purchase a minimum of $558,000.00 worth of BASF products from BASF authorized distributors, not from Plaintiff directly. *See* Dkt. No. 1 ¶¶ 4, 10; *see also* Dkt. No. 1-3 § 2 (requiring that Defendant "purchase from an authorized BASF distributor one hundred percent (100%) of [its] Refinish Products requirements"). "Therefore, Plaintiff is entitled to, at most, the profit it would have made from its sale of the products to an authorized dealer." *BASF Corp.*, 2022 WL 2302152, at *2 n.1.

Neither the complaint nor Plaintiff's motion indicate what Plaintiff's profits would have been had Defendant purchased $274,908.96 in Refinish Products from BASF distributors. The Requirements Agreement also does not contain a liquidated damages provision requiring Defendant to pay BASF all or any portion of Defendant's unfulfilled Minimum Purchase Requirement in the event of a breach. *See generally* Dkt. No. 1-3.

As a result, Plaintiff has not met its burden of demonstrating, with sufficient evidence, the position it would have been in had Defendant fulfilled the Minimum Purchase Requirement. *See Greyhound Exhibitgroup*, 973 F.2d at 158. Other courts have similarly declined to award BASF contractual damages based on the defendant's unfulfilled minimum purchase requirement. *See, e.g.*, *BASF Corp*, 2022 WL 704127, at *7 (declining to award BASF damages in the amount of the unfulfilled minimum purchase where BASF has "[c]onspicuously . . . [left out] . . . any identification of the entity or entities to whom the purchase balance is due and owing" and "has provided no documentation or other proof as to what monetary benefit BASF would have derived" if defendant fulfilled the minimum purchase requirement); *BASF Corp.*, 2022 WL 2302152, at *2 (declining to award BASF damages in the amount of the unfulfilled minimum purchase requirement because BASF is entitled to at most "the amount of the profit it would have made had [p]laintiff" fulfilled the minimum purchase requirement); *BASF Corp.*, 2022 WL 16973248, at *5

(declining to award BASF expectation damages regarding the unfulfilled minimum purchase requirement because BASF failed to address "(1) compensation for the products not actually sold to Defendants, as well as (2) the retained products, which BASF may now sell to another buyer."); *BASF Corp. v. Blanchards' Auto Paint & Body LLC*, No. 22-CV-01008 (BAJ) (RLB), 2024 WL 2955616, at *4 (M.D. La. June 12, 2024) (declining to award damages for the remainder of the minimum purchase requirement where the plaintiff could result in a windfall due to the possibility of selling the products to different buyers and failure to provide sufficient facts "to make [the p]laintiff whole"); *BASF Corp. v. W. Hollywood Collision Ctr., Inc.*, No. 22-CV-2994 (PSG) (RAO), 2023 WL 5167356, at *5 (C.D. Cal. July 12, 2023) (declining to award BASF damages in the amount of the unfulfilled minimum purchase requirement because the award is "unsupported, unreasonable, and would be oppressive and contrary to substantial justice." (internal quotations and citations omitted)); *BASF Corp. v. Savage*, 19-CV-3597 (ELH), 2021 WL 1312903, at *4 (D. Md. Apr. 8, 2021) (declining to award BASF the "purchase balance" of the minimum purchase requirement because the parties' contract did "not include any provision that required defendant to pay plaintiff for the difference between the amount of Refinish Products that it purchased and the minimum purchase requirement"); *but see BASF Corp.*, 2022 WL 1407244, at *3 (awarding plaintiff outstanding balance of defendant's minimum purchase requirement).

Accordingly, this Court respectfully recommends denying Plaintiff's request for damages in the amount of $274,908.96 for the balance of the unfilled Minimum Purchase Requirement.

## B.    Contract Fulfillment Consideration

Plaintiff further requests $79,000 for the Contract Fulfillment Consideration that it paid Defendant. *See* Dkt. No. 1 ¶¶ 12, 15, 23-24; Dkt. No. 24-7, at 7, 11.

The Requirements Agreement states that if the contract "terminate[s] for any reason" before Defendant reaches the Minimum Purchase Requirement, then Defendant "shall promptly" refund the Contract Fulfillment Consideration. Dkt. No. 1-3 § 3. According to the declaration of Caroline Cooper—a BASF East Zone Manager for the Automotive Refinish Business—Plaintiff paid the $79,000.00 Contract Fulfillment Consideration to Defendant, and Defendant failed to refund the consideration despite having a contractual obligation to do so. *See* Dkt. No. 24-6 ¶¶ 5, 7-8.

Based on this evidence, this Court finds that Plaintiff has established its entitlement to the Contract Fulfillment Consideration. Accordingly, this Court respectfully recommends awarding Plaintiff $79,000 in damages, representing the amount of the Contract Fulfillment Consideration. *See, e.g.*, *BASF Corp*, 2022 WL 704127, at *8 (recommending that BASF be awarded the unrefunded consideration owed under the terms of the agreement); *BASF Corp.*, 2022 WL 2302152, at *2 (awarding BASF damages for the unreturned and unearned contract fulfillment consideration).

### C.     Attorneys' Fees

The complaint also seeks to recover "counsel fees" from Defendant. *See* Dkt. No. 1 ¶ 26. While Plaintiff's memorandum of law in support of its motion for default judgment also mentions "attorneys' fees" in the introduction, Dkt. No. 24-7, at 6, the motion is otherwise silent on attorneys' fees, and no amount of attorneys' fees is mentioned in the proposed order, Dkt. No. 24-8. This Court, therefore, finds that Plaintiff has abandoned its request for attorneys' fees. *See, e.g.*, *Jarvis v. N. Am. Globex Fund, L.P.*, 823 F. Supp. 2d 161, 164 (E.D.N.Y. 2011) (denying an award for attorney's fees when "the Complaint seeks attorney's fees, [however] no application is made for such fees on the default judgment motion"); *Ferrara v. Reliable Indus. II, Inc.*, No. 11-

CV-1434 (ENV) (MDG), 2012 WL 6851088 (E.D.N.Y. Sept. 27, 2012) (noting that "[a] party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous time records"), *report and recommendation adopted*, 2013 WL 146085 (E.D.N.Y. Jan. 14, 2013).

But even if Plaintiff had not abandoned this request, an award of attorneys' fees would still be improper.  The Requirements Agreement does not include a provision providing for attorneys' fees in the event of a contractual default, and thus, the default "American" rule applies, and each side must bear their own attorneys' fees.  *See* Dkt. No. 1-3; *see also Hooper Assocs. Ltd., v. AGS Computers, Inc.*, 74 N.Y.2d 487, 491(1989) ("[A]ttorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute, or court rule.").

Accordingly, this Court respectfully recommends that Plaintiff's request for attorneys' fees be denied.

### D.    Costs

Plaintiff also seeks $904.50 in costs, consisting of $402.00 for court filing fees and $502.50 for service of process fees.  *See* Dkt. No. 24; Dkt. No. 24-1 ¶ 15; Dkt. No. 24-7, at 13-14; Dkt. No. 24-8, at 2.  In support of this request, Plaintiff provides invoices documenting these expenditures. *See* Dkt. No. 24-5.

Federal courts sitting in diversity jurisdiction look to FRCP 54(d)(1) to calculate costs, which provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d)(1); *see also BASF Corp*, 2022 WL 704127, at \*9; *Arch Specialty Ins. Co. v. B & V Constr.*

*Inc.*, No. 23-CV-2429 (NGG) (LGD), 2024 WL 1739862, at *7 (E.D.N.Y. Apr. 23, 2024) ("Filing fees and costs for service are appropriately reimbursable as litigation costs.").

Plaintiff is, therefore, entitled to reasonable costs relating to its filing fee and service of process expenditures.  Accordingly, this Court respectfully recommends that Plaintiff be awarded costs in the amount of $904.50.

### E.    Pre-Judgment Interest

Plaintiff also requests pre-judgment interest on the award of monetary damages at the rate of nine percent per annum.  *See* Dkt. No. 1 ¶ 37; Dkt. No. 24; Dkt. No. 24-7, at 6, 12-14; Dkt. No. 24-8, at 2.

"Under New York law, if a plaintiff prevails on a claim for breach of contract, that plaintiff is also entitled to prejudgment interest."  *BASF Corp.*, 2022 WL 1407244, at *3 (awarding pre-judgment interest where the plaintiff prevailed on its breach of contract claim).  Under New York law, the statutory rate for pre-judgment interest is nine percent per annum.  *See* CPLR § 5004; *see also Arch Specialty Ins. Co.*, 2024 WL 1739862, at *7.  The court should calculate pre-judgment interest "from the earliest ascertainable date the cause of action existed . . . to the date the verdict was rendered or the report or decision was made."  CPLR §§ 5001(b)–(c), 5004.  Nevertheless, courts have "wide discretion in determining a reasonable date from which to award pre-judgment interest[.]"  *Eco-Fuels LLC v. Sarker*, No. 22-CV-250 (KAM) (JAM), 2024 WL 779038, at *9 (E.D.N.Y. Feb. 26, 2024) (quoting *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d Cir. 1994)).

Here, pre-judgment interest is appropriate at a rate of nine percent per annum.  *See* CPLR § 5004.  Defendant breached the Requirements Agreement "[i]n or about August 2022[.]"  *See* Dkt. No. 1 ¶ 13.  Therefore, August 31, 2022, is a reasonable date to begin calculating pre-judgment interest.  *See BASF Corp.*, 2022 WL 1407244, at *3 (recommending that pre-judgment

interest should be calculated from December 31, 2019, where complaint alleged that defendant breached the agreement "in December 2019").

Accordingly, this Court respectfully recommends that pre-judgment interest be awarded to BASF at $19.48 per diem[5] from August 31, 2022 through the date of entry of final judgment.

### F. Post-Judgment Interest

Finally, Plaintiff seeks post-judgment interest. *See* Dkt. No. 24; Dkt. No. 24-7, at 6, 13-14; Dkt. No. 24-8, at 2.

Under 28 U.S.C. § 1961, "an award of post-judgment interest is mandatory in any civil case where money damages are recovered." *Campos Marin v. J&B 693 Corp.*, No. 19-CV-00569 (JGK) (KHP), 2022 WL 377974, at *13 (S.D.N.Y. Jan. 21, 2022) (quoting *Duffy v. Oyster Bay Indus., Inc.*, No. 10-CV-3205 (ADS) (ETB), 2011 WL 2259798, at *3 (E.D.N.Y. Mar. 29, 2011), *report and recommendation adopted*, 2011 WL 2259749 (E.D.N.Y. June 2, 2011) (internal quotations omitted)), *report and recommendation adopted*, 2022 WL 374522 (S.D.N.Y. Feb. 7, 2022).

This Court, therefore, respectfully recommends that Plaintiff be awarded post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

### VII. <u>Conclusion</u>

Accordingly, for the reasons set forth above, this Court respectfully recommends that Plaintiff's motion for default judgment be granted in part and denied in part.

As set forth above, this Court respectfully recommends that Plaintiff be granted default judgment on its breach of contract claim and awarded a total of $79,000 in damages, together with

---

[5] ($79,000 ×.09)/365 = $19.48

post-judgment interest pursuant to 28 U.S.C. § 1961(a); pre-judgment interest at $19.48 per diem from August 31, 2022 through the date of entry of final judgment; and costs totaling $904.50.  This Court further respectfully recommends that Plaintiff be denied default judgment with respect to its claims for unjust enrichment and declaratory relief, and that these claims be dismissed.

A copy of this Report and Recommendation is being electronically served on counsel.  This Court directs Plaintiff's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail to Defendant and to file proof of service on ECF by August 13, 2024. Copies shall be served at the following addresses:

The Original Fender Mender, Inc.
27-16 21st Street
Long Island City, New York 11102

The Original Fender Mender, Inc.
c/o Steven Sokolich
169-19 25th Avenue
Whitestone, New York 11357

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days).  Any requests for an extension of time for filing objections must be directed to Judge Gonzalez.  Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. Nov. 15, 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

Dated:      Brooklyn, New York
            August 10, 2024

                                         _/s/ Joseph A. Marutollo_____
                                         JOSEPH A. MARUTOLLO
                                         United States Magistrate Judge